IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, : : : : Plaintiff : v. : : WILLIAM RABEH and : VICTORIA RABEH, : : Defendants : : | CIVIL ACTION NO. 12-6858 |

**Henry S. Perkin, M.J.**                                                                                                    **July 25, 2016**

## MEMORANDUM

This matter is before the Court on Plaintiff's Motion for Summary Judgment. In conjunction with the motion, Plaintiff filed its Brief in Support of Plaintiff's Motion for Summary Judgment and exhibits thereto, as well as Plaintiff's Statement of Material, Undisputed Facts. Defendants did not file a response to motion or statement of facts, despite several reminders from the Court. Having reviewed the motion and pertinent filings pertaining to this matter, the Court is prepared to rule.

## Procedural History

Plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"), a title insurance underwriter, commenced this action against Defendants William Rabeh and Victoria Rabeh on December 7, 2012 by filing a Complaint in this District. According to the Complaint,[1] Commonwealth seeks reimbursement from Defendants for a payment it was required

---

[1] Commonwealth avers that in December 2005, Defendants sold the home in which they currently reside, 888 Pennsylvania Street, Whitehall, Pennsylvania 18052 (hereafter "the Property"), to their daughter, who purchased a title insurance policy (hereafter "the Policy") on the Property from M&T Abstract, LLP ("M&T") underwritten by Commonwealth. Defendants conveyed the Property to their daughter by way of a Special Warranty

to make to its policy holder, Diana Rabeh, Defendants' daughter, under a policy of title insurance ("the Policy") she had purchased. In an effort to recoup its payment under the Policy, Commonwealth has asserted three Counts against Defendants: breach of the warranty deed; common law indemnification; and unjust enrichment.

Defendants initially defaulted on the Complaint, failing for many months to answer or otherwise respond. However, after a motion for default judgment was filed by Commonwealth, and following the entry of a November 14, 2013 Order by the Honorable Lawrence F. Stengel, which directed Defendants to file an answer to the Complaint within 21 days or suffer entry of default judgment, Defendants each filed Answers to Complaint, which are identical. By Order dated December 16, 2013, Judge Stengel denied plaintiff's motion for default judgment.

On March 7, 2014, a Rule 16 conference was held on the record before Judge Stengel. Shortly thereafter, and with the consent of all parties, the action was transferred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of a final judgment.

---

Deed, in which they warranted that the Property was not encumbered by any liens.

At the time of sale, however, Commonwealth avers that the Property was encumbered by several federal tax liens totaling $247,170.94 arising from unpaid federal taxes owed by Defendants. Commonwealth asserts that the federal tax liens either were not discovered by M&T (the company that performed the title search); or, if they were discovered by M&T, it did not except the liens from the title insurance policy, as it should have.

In 2009, the United States of America sued Defendants and their daughter, Commonwealth's insured, in this Court to foreclose its liens and obtain a judicial sale of the Property. Commonwealth contends that because the liens were not excepted from coverage, its insured's title to the Property was clouded, and she stood to lose the Property to foreclosure. Accordingly, Commonwealth paid Defendants' daughter, its insured, $250,000.00 to settle her claim against the Policy, and the daughter in turn used the proceeds to pay the federal tax liens. The foreclosure action was dismissed. Defendants still live in the Property, but their tax liens have been paid off, or paid down substantially, using funds obtained from Commonwealth.

Commonwealth contends that although it was required by the Policy to protect its insured's title, it owed no obligation to Defendants to pay off their tax delinquencies. Commonwealth avers that the Defendants and the Defendants alone are ultimately responsible for their own tax debt.

A subsequent Rule 16 conference was held before the undersigned on April 10, 2014, and a Rule 16 Scheduling Order was issued by the undersigned on that same date.  More specifically, the Court directed that Defendants file any Third Party Complaint on or before May 15, 2014; that discovery be completed by August 15, 2014; and that dispositive motions be filed and served on or before September 15, 2014.  Although Defendants had expressed an interest in joining M&T[2] as a third party defendant, they did not file a Third Party Complaint.

During the course of discovery, Commonwealth served Requests for Production of Documents and Requests for Admissions upon Defendants.  On August 29, 2014, Defendants served identical responses to the Requests for Admissions, and also served objections and responses to the Commonwealth's Requests for Production of Documents.  With respect to the requests for production, Defendants responded with numerous objections and promised to produce "all responsive, non-privileged documents in their possession."  However, as represented by Commonwealth, as of the date of filing its motion for summary judgment, Defendants did not produce a single document, or make the required initial disclosures pursuant to Rule 26(a)(l) of the Federal Rules of Civil Procedure.

Plaintiff's Motion for Summary Judgment and Brief in Support of Plaintiff's Motion for Summary Judgment were filed on September 12, 2014.  See Docket No. 23 and 23-1.  In accordance with this Court's April 10, 2014 Rule 16 Scheduling Order,[3] Plaintiff's Statement

---

[2] According to the Affidavit of Ryan J. Muldoon, attached to Commonwealth's motion as Exhibit 7, the online records of the Pennsylvania Department of State show that M&T was dissolved in 2009.

[3] Footnote 1 to the Rule 16 Scheduling Order provides, in pertinent part, as follows:

> Upon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be filed with the motion a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving

of Material, Undisputed Facts was filed simultaneously with the motion and brief.  See Docket Nos. 20 and 23-2.  Defendants were required to file their response to the motion for summary judgment on or before October 15, 2014.  See Docket No. 20.  Defendants failed to do so.  Giving the Defendants, who are *pro se*, the benefit of the doubt, this Court *sua sponte* granted them an extension of time in which to respond by Order dated December 4, 2014, directing that Defendants file their response to the pending motion for summary judgment on or before December 18, 2014.  See Docket No. 24.  In so doing, this Court reminded Defendants that the papers opposing the motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement submitted by Commonwealth, as to which it is contended that there exists a genuine issue to be tried.  See Docket No. 24.  Defendants were further advised that all material facts set forth in the statement required to be served by the moving party may be taken by the Court as admitted unless controverted by the opposing party.  See Docket No. 24.

On December 16, 2014, a bankruptcy case concerning Defendants William Rabeh and Victoria Rabeh was filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania under Chapter 13 of the United States Bankruptcy Code.  See Docket No. 25.  Pursuant to 11 U.S.C. § 362(a)(1) and § 301, the case before this Court was automatically stayed upon the filing of Defendants' Voluntary Petition.  See Docket No. 25.  As a result of the automatic stay, this matter was marked as closed for statistical purposes and placed in the Civil Suspense file by Order dated December 17, 2014.  See Docket No. 26.  The December 17, 2014

---

party contends there is no genuine issue to be tried.

See Docket No. 20.

Order further directed that this matter would be restored to the trial docket when the action was in a status so that it may proceed to final disposition. See Docket No. 26.

On October 15, 2015, following notice and hearing, the Honorable Richard E. Fehling of the United States Bankruptcy Court dismissed the bankruptcy case filed by Defendants William Rabeh and Victoria Rabeh. By Order dated October 26, 2015, this Court removed this matter from civil suspense, and directed that Defendants William Rabeh and Victoria Rabeh file and serve their response to Plaintiff's Motion for Summary Judgment on or before November 25, 2015. See Docket No. 27. In so doing, this Court reminded Defendants that the papers opposing the motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement submitted by plaintiff, as to which it is contended that there exists a genuine issue to be tried. See Docket No. 27. Defendants were again advised that all material facts set forth in the statement required to be served by the moving party may be taken by the Court as admitted unless controverted by the opposing party. See Docket No. 27. Defendants did not respond to the pending motion for summary judgment, and they did not file a response to the Commonwealth's statement of material facts.

**Background**

By Rule 16 Scheduling Order of the undersigned dated April 10, 2014, any party in this litigation filing a motion for summary judgment was required to file a brief, together with "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See Docket No. 20 at Footnote 1. The concise statement of facts was required to be supported by citations to the

record.

In addition, this Court's Rule 16 Scheduling Order provided that any party opposing a motion for summary judgment was required to file a brief in opposition to the motion and

> a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the moving party], as to which it is contended that there exists a genuine issue to be tried.

See Docket No. 20 at Footnote 1.  Moreover, our Status Conference Order provided that "[a]ll material facts set forth in the statement required to be served by the moving party may be taken by the Court as admitted unless controverted by the opposing party." See Docket No. 20 at Footnote 1.

In this case, Commonwealth filed a concise statement of facts in support of its motion for summary judgment on September 12, 2014.  See Docket No. 23-2.  However, despite several Orders from this Court directing Defendants to file a response to the pending motion for summary judgment, Defendants failed to do so, and they also did not file any concise statement *in opposition to* Commonwealth's concise statement as required by our Orders of April 10, 2014, December 4, 2014, and October 26, 2015.[4]  Accordingly, the factual assertions set forth by Commonwealth in its statement filed September 12, 2014 are deemed admitted.  See Binder v.

---

[4] By subsequent Orders of this Court dated December 4, 2014 and October 26, 2015, in an effort to have Defendants respond to the pending motion for summary judgment, the Court *sua sponte* extended the time period in which Defendants were to respond.  See Docket Nos. 24 and 27.  In each instance, this Court reminded Defendants that the papers opposing the motion for summary judgment were to include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement submitted by Commonwealth, as to which it is contended that there exists a genuine issue to be tried.  See Docket Nos. 24 and 27.  Defendants were further advised that all material facts set forth in the statement required to be served by the moving party may be taken by the Court as admitted unless controverted by the opposing party.  See Docket Nos. 24 and 27.

PPL Servs. Corp., No. Civ.A. 06-2977, 2009 U.S. Dist. LEXIS 103814 (E.D. Pa. Nov. 5, 2009) (Perkin, M.J.); Higgins v. Hosp. Cent. Servs., No. Civ.A. 04-74, 2004 U.S. Dist. LEXIS 24907 (E.D. Pa. Dec. 9, 2004) (Gardner, J.); Kelvin Cryosystems, Inc. v. Lightnin, No. Civ.A. 03-881, 2004 U.S. Dist. LEXIS 23298 (E.D. Pa. November 15, 2004) (Gardner, J.).

Our requirement for a concise statement and a responsive concise statement is consistent with Rule 56 of the Federal Rules of Civil Procedure. In addition Rule 83(b) of the Federal Rules of Civil Procedure provides that:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

Fed.R.Civ.P. 83(b). Thus, even if our requirement for a separate concise statement is not consistent with Rule 56, we gave Defendants actual and repeated notice of our requirement, and they did not comply. Binder, *supra*.

## Facts

Based upon the record papers, exhibits, and Plaintiff's Statement of Material, Undisputed Facts (Docket No. 20-2), the pertinent facts are as follows:

In 1991, Defendants William Rabeh and Victoria Rabeh acquired title to the Property at 888 Pennsylvania Street, Whitehall, Pennsylvania 18052 (also referred to as 986 Congress Street) and have lived there since that time. On or about December 23, 2005, the Defendants conveyed the Property to their daughter, Diana Rabeh, for the purchase price of $215,000, by Special Warranty Deed ("the Deed"). As of December 23, 2005, the Property was

encumbered by federal tax liens in excess of $100,000 in favor of the United States of America against Defendants for unpaid income, employment and unemployment taxes ("Federal Tax Liens").

Prior to the settlement date of December 23, 2005, Diana Rabeh ordered and paid for a title search and title insurance on the Property from M&T Abstract LLP, which at that time was an authorized title issuing agent of Commonwealth.  M&T performed the title search on the Property.  M&T's title search incorrectly failed to reveal the Federal Tax Liens.

On December 28, 2005, Commonwealth Insurance Policy No. 866-0353303 ("the Policy") was issued to Diana Rabeh ("the Insured"), pursuant to which Commonwealth agreed to insure good and marketable title to the Property, subject to the Conditions, Exclusions, and Exceptions set forth therein.  The Federal Tax Liens were not listed by M&T as Exceptions from coverage under the Policy.

On or about February 5, 2009, the United States filed a civil Complaint in the United States District Court for the Eastern District of Pennsylvania against the Defendants herein, and the Insured, captioned <u>United States of America v. William Rabeh, Victoria Rabeh, Diana Rabeh, and Sovereign Bank</u>, No. 09-00539 (the "Federal Tax Lien Action").  In the Federal Tax Lien Action, the United States alleged that Defendants had transferred the Property to the Insured under a fraudulent conveyance, and sought to foreclose the Federal Tax Liens against the Property and obtain a judicial sale thereof.  After the Insured, Diana Rabeh, received the Complaint in the Federal Tax Lien Action, she asserted a claim for coverage under the Policy with Commonwealth.

On or about April 12, 2012, Defendants William and Victoria Rabeh agreed, in the Federal Tax Lien Action, to the entry of a judgment against them, in favor of the United States, in the combined total of $247,170.94, plus statutory additions, as follows:

- against Defendants William and Victoria Rabeh in the amount of $131,570.79, plus statutory additions to tax accruing after December 5, 2011, for income taxes for the years 1995, 1996 and 2005;

- against Defendant Victoria Rabeh in the amount of $44,584.26, plus statutory additions to tax accruing after December 5, 2011, for employment taxes for the tax periods ending December 31, 2002, and December 31, 2003, and a civil penalty for the tax period ending December 31, 2003; and

- against Defendant William Rabeh in the amount of $71,015.89, plus statutory additions to tax accruing after December 5, 2011, for a civil penalty and for the tax period ending December 31, 1998.

One week later, on or about April 19, 2012, Commonwealth and the Insured entered into a Settlement Agreement pursuant to which, in exchange for a payment of $250,000.00 by Commonwealth, they settled and dismissed all claims between them with respect to the Insured's claim against the Policy. The funds obtained from Commonwealth by the Insured Diana Rabeh were applied to the outstanding Federal Tax Liens, and reduced the Agreed Judgment against the Defendants. As Mr. Rabeh told Judge Stengel during the Rule 16 conference on March 7, 2014, the Federal Tax Lien Action was settled, "but not through me. . . . I think it was through the title insurance company." Following these payments, the Federal Tax Lien Action was dismissed and the United States discontinued its efforts to foreclose on the Property.

Defendants benefitted from Commonwealth's payment of $250,000 to the Insured because the United States applied these funds to the outstanding Federal Tax Liens reducing Defendants' liability to the United States.  Defendants continue to reside in the Property .

**Standard of Review**

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial.  Fed. R. Civ. P. 56(c).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing

evidence to establish *prima facie* each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## Discussion

### Breach of Warranty

As noted above, on or about December 23, 2005, the Defendants conveyed the Property to their daughter, the Insured, for the purchase price of $215,000, by Special Warranty Deed. The Deed from Defendants to the Insured warrants that, "said Grantor(s) will specially WARRANT AND FOREVER DEFEND the property hereby conveyed." See Docket No. 1-3, Exhibit A to the Complaint at p. 3.

By Pennsylvania statute, and as correctly noted by Commonwealth, the foregoing language of the Deed gives rise to a special warranty:

> A covenant or agreement by the grantor or grantors in any deed or instrument in writing for conveying or releasing land that, he, they, or it "will warrant specially the property hereby conveyed," shall have the same effect as if the grantor or grantors had covenanted that he or they, his or their heirs and personal representatives or successors, will forever warrant and defend the said property, and every part thereof, unto the said grantee, his heirs, personal representatives and assigns, against the lawful claims and demands of the grantor or grantors, and all persons claiming or to claim by,

11

through, or under him or them.

21 P.S. § 6.

Under a special warranty deed, the grantor agrees to defend and hold harmless the grantee "against any adverse claimant with a superior interest in the land claiming through the grantor." Leh v. Burke, 231 Pa. Super. 98, 110, 331 A.2d 755, 762 (1974). "[T]his covenant is breached if there is an existing encumbrance created by the grantor at the time the deed is delivered ." 231 Pa. Super. at 110-111, 331 A.2d at 762 (quoting Litmans v. O'Donnell, 173 Pa. Super. 570, 574, 98 A.2d 462, 464 (1953)); see also Bloshinski v. Falaz, 168 Pa. Super. 565, 568, 79 A.2d 798 (1951) (where vendor agreed in writing to convey certain realty by special warranty deed, vendor "was obliged to deliver title to the land free from liens"). In order to recover against a grantor under a special warranty deed, a party must show that the grantor "*caused* or allowed a lien or encumbrance to burden the land at the time of transfer." Leh, 231 Pa. Super. at 110 (emphasis added).

In this matter, it is undisputed that the Defendants conveyed the Property to their daughter, the Insured, under a Deed which contained a special warranty of title, ensuring that there were no encumbrances on the Property which Defendants had created or allowed. The Federal Tax Liens, however, were encumbrances upon the Property, and it is undisputed that the Federal Tax Liens existed at the time of the conveyance of the Property to the Insured. See Docket No. 23-3, Exhibits 1 and 2 to Plaintiff's Motion at ¶ 8. It is also undisputed that the Federal Tax Liens were created or suffered by Defendants, the grantors. In fact, the Defendants admitted during the March 7, 2014 Rule 16 conference on the record before Judge Stengel that the Federal Tax Liens existed before the conveyance of the Property to the Insured, and were not

satisfied from the proceeds of the sale.  See Docket No. 23-3, Exhibit 3 to Plaintiff's Motion at p. 13, line 11 through p. 14, line 1.  Accordingly, Defendants are in breach of the aforesaid warranty set forth in the Deed.

Moreover, by virtue of its payment to Defendants' daughter, the Insured, Commonwealth is subrogated to the Insured's rights against Defendants, and stands in her shoes to sue Defendants for their breach of warranty.  More specifically, the Policy provides as follows at ¶13 of the Conditions and Stipulations:

> 13.   SUBROGATION UPON PAYMENT OR SETTLEMENT.
>
> (a)   The Company's Right of Subrogation.
>
> Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.
>
> The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued . . . .

See Docket No. 1-4, Exhibit B to the Complaint at ¶ 13.

"Subrogation allows the subrogee (in this case [Commonwealth]) to step into the shoes of the subrogor (the Insured) to recover from the party that is primarily liable (the [Defendants]) any amounts previously paid by the subrogee to the subrogor . . . ."  Jones v. Nationwide Prop. & Cas. Ins. Co., 613 Pa. 219, 233-234, 32 A.3d 1261, 1270 (2011).  More specifically,

> [w]hen an insurer pays a claim under a policy, it is actually paying the debt of the tortfeasor. The insurer is only secondarily liable; it is the tortfeasor who is primarily liable. Once the insurer has paid a

> claim to the insured, it may then stand in the shoes of the insured and assert the insured's rights against the tortfeasor. The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation.

Public Serv. Mut. Ins. Co. v. Kidder-Friedman, 1999 Pa. Super. 310, 743 A.2d 485, 488 (Pa. Super. Ct. 1999) (quoting Daley-Sand v. West American Ins. Co., 387 Pa. Super. 630, 564 A.2d 965, 969 (1989)).

Because we find that there are no genuine issues of material fact concerning the Defendants' breach of warranty in this matter, and because Commonwealth's right as subrogee to sue for that breach of warranty is clear as a matter of law, we conclude that Commonwealth is entitled to summary judgment in its favor in the amount of $247,170.94, which is the undisputed amount of the encumbrances, plus costs, with respect to Count I of the Complaint.

## Common Law Indemnification

"The right to indemnity arises by operation of law and will be allowed where necessary to prevent an unjust result. It is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault. . . . Common law indemnity . . . is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant *whose conduct actually caused the loss*." City of Wilkes-Barre v. Kaminski Bros., 804 A.2d 89, 92 (Pa. Commw. Ct. 2002) (emphasis added); Burbage v. Boiler Engineering & Supply Co., 433 Pa. 319, 326, 249 A.2d 563, 567 (1969) (common law indemnity applies when "a person who, without active fault on his own part, has been compelled by reason of some obligation to pay damages occasioned by the negligence of another").

Indemnity is available from those who are primarily liable to those who are merely secondarily or vicariously liable. Burch v. Sears, Roebuck Co., 320 Pa. Super. 444, 457, 467 A.2d 615, 622 (1983) (citing Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951)).  As correctly noted by Commonwealth, when an insurer pays a claim under a policy, it is only secondarily liable, and the tortfeasor is primarily liable. Public Serv. Mut. Ins. Co. v. Kidder-Friedman, 1999 Pa. Super. 310, 743 A.2d 485, 488  (Pa. Super. Ct. 1999)

As noted above, it is undisputed that Defendants have admitted that as of December 23, 2005, the Property was encumbered by Federal Tax Liens in favor of the United States of America.[5]  See Docket No. 23-3, Exhibits 1 and 2 to Plaintiff's Motion at ¶ 8.  These Federal Tax Liens arose from the Defendants' failure to pay their income taxes for the years 1995, 1996 and 2005; their employment taxes for the tax periods ending December 31, 2002 and December 31, 2003; and civil penalties for the tax periods ending December 31, 2003 and December 31, 1998.

Defendants, as delinquent taxpayers, were primarily and actively responsible for the failure to pay their past due income taxes and employment taxes, as well as their failure to satisfy the government's Federal Tax Liens on the Property.  We find that Commonwealth's responsibility to pay off those liens, if any, was passive and secondary and imputed solely by virtue of the Policy of title insurance it had provided to their daughter, the Insured.  See Docket No. 1-4, Exhibit B to the Complaint.  Based on the record before us, we do not find any basis to

---

[5] According to their Answers to Complaint, Defendants admitted that as of December 23, 2005, the Property was encumbered by federal tax liens in favor of the United States of America against William Rabeh and Victoria Rabeh for unpaid income, employment, and unemployment taxes.  See Docket No. 23-3, Exhibits 1 and 2 to Plaintiff's Motion at ¶ 8.

15

attribute any fault to Commonwealth.  Accordingly, because there are no genuine issues of material fact concerning the Defendants' primary responsibility to pay their own federal taxes and satisfy the Federal Tax Liens, we conclude that Commonwealth is entitled to summary judgment in its favor under the common law theory of indemnification in the amount of $247,170.94, plus costs, with respect to Count II of the Complaint.

                              Unjust Enrichment

Unjust enrichment is an equitable doctrine, and the law will imply a contract which imposes a duty on a party to pay to another the value of the benefit conferred, or restitution where the party has been unjustly enriched.  See Schenck v. David, 446 Pa. Super. 94, 97, 666 A.2d 327, 328-329 (1995).  The elements necessary to prove unjust enrichment have been described as follows: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  Limbach Co., LLC v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006) (quoting Mitchell v. Moore, 729 A.2d 1200, 1203-1204 (Pa. Super. 1999); see also Torchia v. Torchia, 346 Pa. Super. 229, 233, 499 A.2d 581, 582 (Pa. Super. 1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'").

As correctly noted by Commonwealth, it has conferred a very substantial benefit upon Defendants resulting from the settlement with its Insured on or about April 19, 2012.  More specifically, in exchange for a payment of $250,000.00 by Commonwealth, all claims between

Commonwealth and the Insured were settled, and the funds obtained from Commonwealth by the Insured were applied to the outstanding Federal Tax Liens, thereby reducing the Agreed Judgment against the Defendants.  As Mr. Rabeh told Judge Stengel during the Rule 16 conference on March 7, 2014, the Federal Tax Lien Action was settled, "but not through me. . . . I think it was through the title insurance company."  See Docket No. 23-3, Exhibit 3 to Plaintiff's Motion at p. 12, line 19 through p. 13, line 1.  Following these payments, the Federal Tax Lien Action was dismissed and the United States discontinued its efforts to foreclose on the Property.  Defendants continue to reside in the Property.

We find, based on the foregoing facts, that it would be unconscionable and unjust to allow Defendants to retain the benefit of Commonwealth's payment to the Insured, which payment served to satisfy or greatly reduce the Federal Tax Liens against the Property in which they continue to reside.  Although Defendants were not Commonwealth's insureds, they were the primary beneficiaries of Commonwealth's payment under the Policy and they continue to reside in the property.  Because Defendants have failed to identify any genuine issues of material fact concerning the claim of unjust enrichment, Commonwealth is entitled to summary judgment in its favor in the amount of $247,170.94, plus costs, with respect to Count III of the Complaint.

## Conclusion

Plaintiff's Motion for Summary Judgment will be granted.  An Order follows.